89 So.2d 235

**STREMMING VENEER COMPANY**

v.

**R. J. JACOBY et al., d/b/a Jacoby Mfg. Co.**

5 Div. 478.

Court of Appeals of Alabama.

Aug. 14, 1956.

Grady Reynolds, Reynolds & Reynolds, Clanton, for appellant.

Jos. J. Mullins, Clanton, for appellees.

HARWOOD, Presiding Judge.

Appellee's complaint below contained three common counts claiming $1,202.18 as damages due by account, by account stated, and for goods, wares, and merchandise sold by appellee to appellant.

Issue was joined on appellant's plea in short by consent, etc.

The jury returned a verdict in favor of the appellee, and assessed damages at $636, judgment being entered accordingly.

Appellant's motion for a new trial being overruled, an appeal was perfected to this court.

Two points are presented by appellant's assignments of error. 1. That the verdict was contrary to the evidence, and 2, that the lower court erred in refusing appellant's written requested charge 2.

The evidence below shows that the appellant was a manufacturer of veneer in Maplesville, Alabama, and the appellee operated a lumber mill in Bay Minette, Alabama.

In 1950 appellant and appellee entered into negotiations whereby the appellee was to manufacture veneer stock for sale to appellant. Veneer stock, as we gather from the record, is a very thin piece of wood made by peeling it from a log by means of a lathe. The sheets of stock are glued, laid across grain, and fastened to each other under pressure to form veneer.

The appellee testified that the appellant agreed to pay him $12.25 per thousand for stock of very good quality, with no mention of other grades or prices, except that he was to be paid $7.50 per thousand for "rejects."

Without any order the appellee in late December 1950 shipped to appellant a quantity of stock. The appellant paid appellee for this stock at the rate of $10.50 per thousand, on the basis that the stock was of second grade.

The appellee said he "let it go on the basis of trying to get in."

Thereafter the appellee made up a sample of stock and carried it to appellant's mill. This stock was apparently satisfactory, and on this occasion appellant gave appellee additional orders.

The value of the sample stock, which was delivered to appellant was, according to appellee $10.04, though appellant's witnesses.

testified they did not know appellee was charging them for this sample stock.

On January 8, and January 11, 1951 appellee forwarded stock to appellant.

By letter dated 6 February 1951 the appellant forwarded a check for $1,464.58 to appellee, and stated in the letter that the payment was at the rate of $10 per thousand, "which is as much as we can possibly pay for it."

This check was cashed by appellee, though he testified he had no intention of accepting the amount as full payment.

The final shipment of stock by appellee to appellant was on 6 February 1951.

In connection with this shipment appellee testified that he was called by appellant and told to come up and get the shipment, that it was no good.

The appellee immediately drove up to appellant's plant "to see what it was all about."

Then he and Mr. Stremming tried to locate the stock shipped by appellee, but could not find it. According to appellee, "after the embarrassment he turned me over to Mr. Royster to straighten it all out and he had to come to the bank in Clanton that day."

Other than one small piece a few inches square, none of appellee's stock could be located, and upon Mr. Royster's assurance that the matter would be taken care of appellee left.

According to the appellee, this shipment, as in case of the others, was very good quality veneer stock and in every way met the specifications set in the contract agreement.

This last shipment, at $12.25 per thousand amounted to $607.11.

On 10 February 1951 appellant forwarded to appellee a check in the amount of $281.32 for this last shipment of stock, and in the covering letter stated that it was unfit for making plywood, and had Mr. Stremming been there it would not have been unloaded; and payment was being made at reject prices.

Appellee presented the check for payment, but before it reached the bank on which it was drawn payment was stopped by the appellant.

However, on 5 April 1951 the appellant notified appellee that the check was being released from the stop payment order.

The appellee never presented the check again, and it was still uncashed at the time of trial.

The evidence presented by the appellant was directed toward showing that all of the stock shipped by appellee was of inferior quality and that on the basis of inferior grades appellee was paid the full worth for all the stock.

■ In view of the appellee's testimony that the stock was of good quality and in every way met specifications for the $12.25 per thousand price agreed upon, the above conflict in appellant's and appellee's evidence raised a question of fact solely within the province of the jury to resolve.

Counsel for appellant argues that regardless, the covering letters, followed by appellee's cashing of the checks, constituted an accord and satisfaction. Had not the appellant stopped payment of the check sent as satisfaction for the last shipment, merit could attach to this argument.

According to appellee $607 was due on the last shipment of stock.

■ The check for $281.32 forwarded for payment of this shipment was apparently accepted by appellee, in that he presented it for payment. This could constitute an accord. The payment of the check was however stopped by appellant. Thus the accord agreement was unexecuted, and certainly not satisfied. J. F. Morgan Pav-

ing Co. v. Carroll, 211 Ala. 121, 99 So. 640. The appellant's own conduct having prevented the execution of the accord agreement, he is in no position, as a matter of law, to now claim the debt was satisfied by the attempted cashing of the check by the appellee.

Even though the stop order was released some seven weeks later, the accord agreement was not thereby revived in view of appellant's refusal to again present or process the check.

■ The evidence presented by the appellee as to this last shipment, and the amount due thereon, was amply sufficient, if believed by the jury to their reasonable satisfaction, to support the verdict and judgment of $636, since appellee claimed there was $607.11 due and unpaid, which with interest at six per cent from 6 February 1951 to date of trial on 4 March 1953, would amount to a sum greater than that awarded.

The court therefore did not err in denying appellant's motion for a new trial on the ground that the verdict was contrary to the evidence.

In view of this conclusion we pretermit consideration of the claims growing out of the previous shipments.

■ The court likewise did not err in refusing appellant's requested charge No. 2.

This charge is misleading and abstract in that it hypothesizes the cashing of a check, whereas the undisputed evidence shows that the check for the last shipment of stock was never cashed.

The charge was also refused without error in that it is not hypothesized upon the evidence, and attempts to state an abstract principle of law without an instruction as to its effect upon the issues in the case on trial. Fleetwood v. Pacific Mut. Life Ins. Co., 246 Ala. 571, 21 So.2d 696, 159 A.L.R. 171.

Affirmed.